FILED
U.S. DISTRICT COURT
DISTRICT OF **IN THE UNITED** STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2003 FEB -4  P 3: 49

LAURIE J. POSS, M.D.                    *

CLERK'S OF
AT BALT **Plaintiff**          *

DEPUTY
        vs.                             *    CIVIL ACTION NO. MJG-01-3279

UNUM LIFE INSURANCE COMPANY             *
    OF NORTH AMERICA
                                        *

            Defendant

*       *       *       *       *       *       *       *       *

<u>MEMORANDUM AND ORDER</u>

The Court has before it Plaintiff's Motion for Summary

Judgment on Count Two of the Amended Complaint, Defendant's

Motion To Dismiss Count One of Plaintiff's Amended Complaint and

Motion for Summary Judgment on Count Two of Plaintiff's Amended

Complaint, and the materials submitted by the parties in relation

thereto.  The Court has held a hearing and has had the benefit of

the argument of Counsel.


I.    <u>BACKGROUND</u>[1]

This case arises out of a dispute over disability insurance

payments owed to the Plaintiff, Dr. Laurie J. Poss ("Plaintiff"

---

[1]    Because both parties seek summary judgment, the facts
are here presented in as neutral a fashion as possible.  Any
material disagreement between the parties as to the facts will be
detailed, as necessary, in the Discussion section of this
Memorandum.



or "Poss") pursuant to an insurance policy issued by the
Defendant, UNUM Life Insurance Company of America ("Defendant" or
"UNUM").

From 1994 until about September 1, 1999, Plaintiff operated
a medical practice as Laurie J. Poss, M.D., P.A. ("the covered
Corporation"), an S-Corporation of which she was both a
shareholder and an employee.  In September of 1994, UNUM issued a
long-term disability policy to the Corporation ("the Policy").
The Policy covered employees in "active employment," which was
defined in the policy as working on a full-time basis for the
employer, at the employer's regular place of business or a place
to which the employer's business required travel.

In September of 1998, Plaintiff entered an acquisition
arrangement with Riverside Primary Care Associates, LLP
(Riverside).  Pursuant to this agreement, Riverside operated the
Plaintiff's medical practice and paid Plaintiff and the covered
Corporation certain sums as provided in the agreement.  Plaintiff
continued to operate her practice in the same manner, from the
same locations, and with the same staff as when she had practiced
as Laurie J. Poss, M.D., P.A. Premiums were paid on the Policy.
See Affidavit of Helen White, at ¶9-10.  In June of 1999,
Plaintiff severed the relationship with Riverside.  For the year

2

1999, Riverside issued a 1099 to Plaintiff individually in the amount of $100,000.

The parties agree that Plaintiff was rendered medically disabled under the Policy definition on or about September 12, 2000, due to injuries suffered in an accident.  The only disputed issue is the amount of the disability benefits to which the Plaintiff is entitled.

At the time Plaintiff became disabled, UNUM began paying her benefits at a monthly minimum level while investigating Plaintiff's claim.  The Policy entitled an employee rendered disabled to a maximum benefit of "60%... of basic monthly earnings not to exceed the maximum monthly benefit [$6,000], less other income benefits."  The minimum monthly benefit consisted of the greater of $100 a month or 10% of the monthly benefit before deductions for other income benefits.

Plaintiff timely submitted a claim for benefits under the Policy.  On February 7, 2001, UNUM denied the claim on the basis that Plaintiff was ineligible because her disability did not exceed the Policy's 90-day elimination period.  Plaintiff challenged this interpretation of the Policy language and UNUM agreed that her disability would be covered under the Policy.

On March 12, 2001, UNUM notified Plaintiff that she would be entitled to payments of $100.00 a month, the minimum payment

3

under the Policy, on the basis of its analysis that her "basic
monthly earnings" from the covered Corporation were zero.

Plaintiff filed the instant suit under state contract law
(Count I) and, in the alternative, ERISA (Count II), seeking
recovery of the benefits to which she claims she is entitled, in
the amount of approximately $6,000 per month.

By her instant Motion, Plaintiff seeks summary judgment on
her claim for disability benefits under ERISA (Count II).  UNUM
opposes this motion and moves for Dismissal of Count I and
summary judgment on Count II.

## II.   LEGAL STANDARDS

### A.   Dismissal

A motion to dismiss for failure to state a claim under Rule
12(b)(6) is a means of testing the legal sufficiency of a
complaint.  The Court must deny a motion to dismiss unless it
"appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to relief."
Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "The question
therefore is whether in the light most favorable to the
plaintiff, and with every doubt resolved in his behalf, the
complaint states any valid claim for relief."  5A Charles Alan

4

Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357 at 332-36 (2d ed. 1990).

The Court, when deciding a motion to dismiss, must consider well-pled allegations in a complaint as true and must construe those allegations in favor of the plaintiff.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974);  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421-22 (1969).  The Court must further disregard the contrary allegations of the opposing party.  <u>See</u> <u>A.S. Abell Co. v. Chell</u>, 412 F.2d 712, 715 (4th Cir. 1969).  "However, the Court is not required to accept as true the legal conclusions set forth in a plaintiff's complaint."  <u>Nat'l Coalition for Students with Disabilities Educ. and Legal Def. Fund v. Scales</u>, 150 F.Supp.2d 845, 849 (D. Md. 2001) (citing <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243-44 (4th Cir. 1999)).  A complaint may be dismissed if the law does not support the conclusions argued, or where the facts alleged are not sufficient to support the claim presented.

### B.    Summary Judgment

In deciding a summary judgment motion, the Court must look beyond the pleadings and determine whether there is a genuine need for trial.  <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The Court must determine whether the evidence presents a sufficient disagreement to

require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53 (1986).  If the defendant carries its burden by showing an absence of evidence to support a claim, the plaintiff must demonstrate that there is a genuine issue of material fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986).  The Court must look at the evidence presented in regard to the motion for summary judgment through the non-movant's rose colored glasses but must view it realistically.  Nevertheless, the non-movant is entitled to have all reasonable inferences drawn in his favor. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

An issue of fact must be both genuine and material in order to forestall summary judgment.  An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the plaintiff.  See Anderson, 477 U.S. at 248.  An issue of fact is material only if the establishment of that fact might affect the outcome of the lawsuit under governing substantive law.  See id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).

6

III. DISCUSSION

A.   Standard of Review

The parties agree that the standard of review for this Court

in reviewing a benefits determination under this Policy is <u>de</u>

<u>novo</u>. Thus, the Court's task is to interpret the Policy

according to ordinary principles of contract law. <u>See</u> <u>Booth v.</u>

<u>Wal-Mart Stores, Inc.</u>, 201 F.3d 335, 341 (4th Cir. 2000); <u>Wheeler</u>

<u>v. Dynamic Eng'g Inc.</u>, 62 F.3d 634, 638 (4th Cir. 1995).

A further question on <u>de</u> <u>novo</u> review is whether the Court

may consider evidence outside the administrative record that was

before the administrator who made the initial benefits decision.

Plaintiff has submitted evidence outside of the administrative

record in conjunction with her Motion, and UNUM argues that this

evidence should not be considered.

In <u>Quesinberry v. Life Ins. Co. of N. Am.</u>, 987 F.2d 1017

(4th Cir. 1993), the Fourth Circuit adopted a flexible approach

as to what evidence a Court can consider under a <u>de</u> <u>novo</u> standard

of review.

> In our view, the most desirable approach to the
> proper scope of <u>de</u> <u>novo</u> review under ERISA is one
> which balances the[] multiple purposes of ERISA.
> Consequently, we adopt a scope of review that
> permits the district court in its discretion to
> allow evidence that was not before the plan
> administrator. The district court should exercise
> its discretion, however, only when circumstances
> clearly establish that additional evidence is

7

necessary to conduct an adequate <u>de novo</u> review of
the benefit decision. In most cases, where
additional evidence is not necessary for adequate
review of the benefits decision, the district
court should only look at the evidence that was
before the plan administrator or trustee at the
time of the determination.

<u>Id.</u> at 1025.

Thus, the Court shall exclude evidence outside of the
administrative record, unless there is a clear showing that
"additional evidence is necessary to conduct an adequate <u>de novo</u>
review of the benefit decision." <u>Id.</u>  Whether such "additional
evidence" is necessary will be decided based upon each piece of
evidence sought to be introduced, and at the time it is sought to
be introduced.

B.   <u>Count I – State Law Contract Claim</u>

UNUM moves to dismiss Plaintiff's contract claim, brought
pursuant to Maryland law, on the basis that the Plaintiff's claim
is governed by ERISA, and that Plaintiff's state-law cause of
action is thus preempted.   Plaintiff counters that because
Defendant has attempted to characterize her as a "sole
proprietor" under the Policy, ERISA does not apply.  However,
this argument is meritless.  Nowhere has UNUM attempted to
characterize Plaintiff as a "sole proprietor."  Rather, UNUM has
maintained throughout that the provisions of Section 3(a) and

(b), applying not to sole proprietors but to "other employees"
apply to Plaintiff's claim for benefits.

Further, Plaintiff has herself moved for summary judgment on
her ERISA claim, arguing that she is entitled to recover under
ERISA.


### 1.    Applicability of ERISA

ERISA, or The Employee Retirement Income Security Act of
1974 governs employee welfare benefit plans that an employer
establishes or maintains for the benefit of its employees.   29
U.S.C. § 1002(3), 1003.  ERISA defines an "employee welfare
benefit plan," in pertinent part, as:

> any plan, fund, or program which was heretofore or
> is hereafter established or maintained by an
> employer . . . for the purpose of providing for
> its participants or their beneficiaries, through
> the purchase of insurance or otherwise, (A) . . .
> benefits in the event of . . . disability . . .

Id. § 1002(1).

An ERISA plan is established if there is "some payment and
manifestation of intent by the employer . . . to provide a
benefit to the employees or the employees' beneficiaries of the
type described in 29 U.S.C. § 1002(1)."  Custer v. Pan Am. Life
Ins. Co., 12 F.3d 410, 417 (4th Cir. 1993).

The parties here appear to agree that the Policy is one maintained under ERISA. The Court so concludes. It is clear that the plan is "(1) a plan, fund or program, (2) established or maintained (3) by an employer, employee organization, or both, (4) for the purpose of providing a benefit, (5) to employees or their beneficiaries." Id. Neither party has presented any argument nor is there any evidence that the Policy falls within any exception or "safe harbor" provision that would make ERISA inapplicable.

## 2.    Preemption of State Law Contract Claims

UNUM argues that because ERISA applies to Plaintiff's cause of action, her state law claims are preempted by ERISA's comprehensive scheme.

UNUM correctly points out that ERISA contains a broad preemption clause, stating that ERISA provisions "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan..." 29 U.S.C. §1144(a). "State law" is defined as "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." Id. at (c)(1). The Supreme Court has stated that ERISA's preemption clause is to be construed broadly to include claims having "a connection with or reference to" an ERISA plan.

10

Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983).  The

Fourth Circuit, in keeping with the Supreme Court's mandate, has

held that a state law contract claim for breach of an ERISA-

covered policy is preempted by ERISA.  Elmore v. Cone Mills

Corp., 23 F.3d 855, 863 (4th Cir. 1994).

    Plaintiff presents no argument as to why the Court should

not follow established precedent.  Thus, Plaintiff's state-law

contract claim is preempted and shall be dismissed.


    B.    Calculation of Benefits Under the Policy

    The calculation of "basic monthly earnings" is the only

issue here in dispute.  UNUM admits that Plaintiff is eligible

for benefits under the Policy.[2]

    "Basic monthly earnings" is defined in the policy as

follows:

    If you are:

    2.    a Sole Proprietor, [basic monthly earnings] means your
          annual net profit averaged over:

_____

        [2]    Because UNUM has not denied the claim but instead has
determined that Plaintiff is indeed entitled to payment of
benefits under the Policy, Plaintiff's argument that UNUM, in
initially denying benefits based on the limitations period,
waived its right to deny benefits is inapposite.  UNUM is not
attempting to deny liability on new grounds.  On the contrary,
UNUM has accepted its liability for benefit payments.  Plaintiff
simply challenges UNUM's calculation of those benefits.

    a.    the 3 most recent years; or

    b.    the period you have been a sole proprietor, if you have been a sole proprietor for less than 3 years,

Then divided by 12.

\* \* \*

3.    an Employee other than Partners or Sole Proprietors, [basic monthly earnings] means your average monthly earnings as figured:

    a.    from the W-2 form (from the box which reflects wages, tips, and other compensation) received <u>from the employer</u> for the calendar year just prior to the date disability begins; or

    b.    for the period of employment, if no W-2 was received.

Further, "employer" is defined as "a proprietorship, partnership or corporation which becomes a participating employer by completing an application for participation and having the application approved...."  In the instant case, the pertinent employer is Laurie J. Poss, M.D., P.A., the covered Corporation.

The date of disability was September 12, 2000.  Accordingly, to determine basic monthly earnings pursuant to paragraph 3.a. of the policy, it was necessary to refer to the 1999 Form W-2 issued by the covered Corporation to Poss.  However, in 1999 Poss engaged in an unsuccessful effort to merge the practice of the covered Corporation with another practice.  Consequently, Poss worked for the covered Corporation for only six months in 1999

12

and the covered Corporation did not issue a Form W-2 to Poss.
Accordingly, Poss' basic monthly earnings must be computed under
paragraph 3.b of the Policy.

Pursuant to paragraph 3.b., Poss' "Basic Monthly Earnings"
means her "average monthly earnings for the period of
employment."  The parties agree that the pertinent period of
employment was the period from September 1, 1994 (when the Policy
became effective) to the September 12, 2000 date of disability
during which Poss was employed by the covered Corporation.

The record presented to the Court is not presently
sufficient to permit a determination of the average monthly
earnings.  Accordingly, it is readily apparent that there are -
as matters now stand - genuine issues of material fact which
prevent a grant of summary judgment to either side with regard to
the amount of the benefits to be paid Poss.  Nevertheless, it
appears that once Plaintiff produces her personal and corporate
tax returns for the years 1994 or 1991 through 2000 together with
necessary additional documents, a computation can be made without
the necessity for a trial.

Of course, there appear to be various issues that will need
to be resolved incident to the computation.  These would include,
but not be limited to, such matters as:

13

     1.   How to treat the six months in 1999 when Plaintiff
          worked for another corporation.

     2.   How to determine Plaintiff's "earnings" for
          disability income purposes in the context of a
          sub-S corporation.

Under the circumstances, the Court directs Plaintiff to
provide Defendant and the Court with such additional tax returns,
forms W-2, and other records as will be necessary to compute her
"average monthly earnings" under the Policy.    The parties should
then seek to reach agreement as to the amount of benefits to
which Plaintiff is entitled, recognizing that there appear to be
significant debatable issues relating to the precise method of
computation.    Should the parties not reach agreement, the Court
will review the documents and advise the parties as to any
necessary further proceedings.

### C.   Attorney's Fees

Plaintiff has requested that the Court grant her attorney's
fees pursuant to ERISA.    29 U.S.C. §1132(g)(1). The parties agree
that the Court has discretion in awarding such fees.    Further,
the parties agree such fee determinations are to be guided,
according to the Fourth Circuit, by a five-part inquiry,
including:

     1.   The degree of culpability or bad faith on the part of
          the opposing party;

14

2. The ability of the opposing party to satisfy an award of attorneys' fees;

3. Whether an award of attorney's fees against the opposing party would serve a deterrent purpose;

4. Whether the party seeking attorneys' fees sought to benefit all participants in an ERISA plan or aid the resolution of a significant legal issue regarding ERISA; and

5. The relative merits of the parties' positions.

See Quisenbury, 987 F.2d at 1029.  Further, the Fourth Circuit has stated unequivocally that only prevailing parties may be awarded attorney's fees under ERISA, and there is no presumption that prevailing parties are entitled to such an award.  Martin v. Blue Cross & Blue Shield of Virginia, Inc., 115 F.3d 1201, 1210 (4th Cir. 1997)("we now make clear that in the Fourth Circuit, only a prevailing party is entitled to consideration for attorney's fees in an ERISA action").

Plaintiff can, even now, be viewed as the prevailing party because there seems to be no doubt that she is entitled to a benefit greater than the minimum being paid by Defendant. Nevertheless, Plaintiff has not proven bad faith on the part of UNUM in failing to pay heretofore whatever may turn out to be the correct amount.  In fact, the Court - with access to more pertinent information than had been submitted to UNUM - cannot now determine the amount of Plaintiff's benefit and must require

15

more information from Plaintiff.  The Court thus does not find an

award of attorneys' fees appropriate.


IV.   CONCLUSION

       For the foregoing reasons:

       1.    Defendant's Motion to Dismiss Count One of Plaintiff's
             Amended Complaint is GRANTED.

       2.    Defendant's Motion for Summary Judgment on Count Two of
             Plaintiff's Amended Complaint is DENIED.

       3.    Plaintiff's Motion for Summary Judgment on Count Two of
             the Amended Complaint is GRANTED IN PART and DENIED IN
             PART.

             a.    Plaintiff is entitled to have her benefits under
                   the Policy computed pursuant to paragraph 3.b of
                   the Policy.

             b.    Plaintiff's request for attorneys' fees is DENIED.

       4.    By February 21, 2003 Plaintiff shall provide Defendant
             and the Court with such additional tax returns, W-2
             forms, and other documents as may be necessary to
             compute Plaintiff's "basic monthly earnings."

       5.    Within 30 days of receipt of such documents, Defendant
             shall advise Plaintiff of its computation and its
             position as to the amount of Plaintiff's "basic monthly
             earnings."

       6.    The parties shall thereafter seek to resolve the
             computation by agreement.

             a.    If successful, the parties shall so advise the
                   Court and provide an agreed form of Judgment to
                   close the case.

      b.    If unsuccessful, the parties shall so advise the
           Court and further proceedings, as may be
           necessary, shall be set by further Order.

7.    If the Court has not been advised prior thereto, the
     parties shall report on the status of this matter by
     April 1, 2003.


SO ORDERED this ___3d___ day of February, 2003.


                                Marvin J. Garbis
                       United States District Judge


17